May it please the Court. Good morning. My name is Domelie Bonato and I represent the petitioner, Mr. Ilir Osmani. This is my first foil argument before the Court and I'm honored to be here. Petitioner is in court today. He wanted the Court to know that he is in court today wearing his political party's clothing. My argument today has two points. The first, whether the Board erroneously denied the motion to reopen based on ineffective assistance of counsel, and secondly, whether the Board breached its legal duty to provide a complete record, therefore preventing proper administrative and judicial review. I'd first like to go to my first lozada argument. The Board stated that the reason why it denied the motion to reopen was because Osmani failed to provide details of the telephone conversation between his prior counsel and current counsel. Let's assume we agree with you on that. The Board said, we don't think you've satisfied a zada, and let's assume for a second that you did satisfy a zada, your prior counsel did, but also then went on to say we don't find prejudice or ineffective assistance. Could you address the second part of the Board's finding? Yes, Your Honor, in regards to the prejudice? Yeah. Ineffectiveness. Why don't you talk about ineffectiveness first? What didn't counsel do or did do that rendered his assistance ineffective such that Osmani was denied a fundamentally fair hearing? Yes, Your Honor. One of the key points for the ineffective assistance of counsel is his lack of preparation. As submitted in Mr. Osmani's affidavit, his prior counsel did not meet with him prior to the merits hearing in 2011. I don't want to throw you off your argument, but could you address the role of the paralegal? My understanding is he went through a paralegal and then the partner in the firm that was disbarred, and then he finally got to another partner in the firm. I don't have in mind the exact sequence of when they appeared at what stage, but did the paralegal, does the record show anything about what the paralegal did to prepare him? Your Honor, the record does not reflect what the paralegal did to prepare him. It just says that he met with the paralegal in preparation for his asylum case. However, the record also states that he believed her, the paralegal, was an attorney and he did not meet with Attorney Jones, the attorney who represented him in court that day. Let's assume for a moment that the paralegal didn't communicate with the attorney, just the best case possible for you. I'm not sure that we're entitled to assume that since the record doesn't tell us that. But if you review the hearing and put up your transcript argument for a second, it appears the attorney examined witnesses, made a very cogent argument at the end. The I.J. says it's an excellent argument. So he didn't abandon Mr. Asmani during the hearing. In fact, he seems to have done, on the face of it, a relatively competent job. So how are we to find an effective assistant simply because he didn't prepare well in advance? What's the basis for us finding an effective assistant? Your Honor, the basis for finding an effective assistant of counsel is the fact that prior to the hearing, his counsel did not meet with him. The fact that he did not speak English, he did not speak Macedonian, he was unaware of the procedure and the etiquette in the courtroom. These things... Assume all that to be true. But we're not dealing here with a question of... If we were doing Strickland, we'd first look and see whether it fell below the standard of care. And then we'd move on to prejudice. But here, because we're in a hearing in which someone's not entitled to counsel, we're looking at something of whether or not the hearing was rendered fundamentally unfair. So I think what we're all trying to ask, in some way or another, is why was this... Look at the context of this hearing. How would it have been different? How do we know it would have been a different hearing had counsel done more preparation? Or had he met with Mr. Asmani before the hearing and prepped him? What would have been different? What would have been different, Your Honor, we believe is the adverse fact that Mr. Asmani was not aware of the procedure. For instance, as the record shows, the interruptions between the judge, when to speak, when not to speak. The judge mentioned this and even though there are quite a number of gaps in the record, as far as his believability, and we believe that a lot of that is a point to the fact that he did not know pretty much the procedure and what was going on in court. So anyway, if he'd met with his attorney before the hearing started, his attorney would have said, now listen, just answer the questions that we're going to ask. That's all you have to do. Right, and also, Your Honor, if... Well, the judge told him that, essentially. Yes, the judge did tell him that. However, we believe that the hearing would have been different if he had known ahead of time. Also, due to the manner of interpretation, he would have known to expect simultaneous translation to know how to listen to the party statements and the interruptions that the judge complained of. But the judge also told him that as well. Yes, Your Honor. However, we believe that the outcome of the case would have been different had he known ahead of time he would have been prepared. But the judge did say, I.J. found in his written decision, or his oral decision, that there are many places where Mr. Osmani's testimony conflicted. It was contradictory. It was different than his written application. And I'm trying to figure out why that would have been different had counsel met with him beforehand. In other words, are you saying he wouldn't have testified the same way had counsel met with him beforehand? We're arguing, Your Honor, that the perceived inconsistencies of his statement would have been clarified had he been able to meet with his attorney beforehand. Because the asylum application that he filed was submitted nearly three years prior to the date of the asylum hearing. The judge believed that Mr. Osmani had inconsistent statements and he contradicted himself, whereas if he had been prepared and got over the details of his asylum application, that would have mitigated the perceived inconsistencies. So what you're saying is that he walked into the hearing room not being familiar with the process, didn't speak any English? At the time, he did not speak English. So he's disadvantaged from a normal English-speaking person because he doesn't understand what people are saying. So he gets a translator. There's a translator who speaks Macedonian language. And are you saying that the translation, that interpreter was defective in any way? Well, Mr. Osmani states that he speaks, he's a native, ethnically Albanian, and the translation was in Albania, but there were some problems with the translation, and that was also an issue. Okay. And was that, did anybody call that to the judge's attention? I believe at one point his prior counsel mentioned it, but also in the record, Mr. Osmani himself states that he is confused and scared and he doesn't understand what is going on in the machine. So basically what you're saying then, he was thrown off his, he's anxious to begin with, and he was thrown off his game because of all of the various problems he was encountering. And therefore, what the immigration judge found to be inconsistencies or evasiveness were really just a lack of, due to a lack of preparation. Yes, Your Honor. Okay. Thank you. I can briefly address my second point. Let's just assume, your time's beginning to run out, so let's just assume, for discussion purposes, you don't go beyond the ineffective assistance of counsel. You have a direct appeal from the IJ's ruling as well. Sorry, I didn't. Well, let's put aside ineffective assistance of counsel. You have the other case, the direct appeal. Yes. Which turns on the adverse credibility determination. Yes. Why wasn't that supported by substantial evidence? The adverse credibility finding? Yes. Your Honor, the prior counsel filed the appeal, adverse credibility finding, and what he presented was just the fact, more support that he was confused and what he tried to present led to him to support the adverse credibility finding. I do not know why additional evidence was not submitted in the appeal. However, that in and of itself shows ineffective assistance of counsel because there were other issues that could have been raised on appeal and were not. Okay. All right. Well, I'll give you a minute for rebuttal, if you can. Thank you. And you do understand that we've read all your briefing and the oral argument is simply to help us get some clarification. Yes, Your Honor. So we've thoroughly studied his case and the transcripts and everything. I just want you to understand that. Thank you, Your Honor. Sure. Thank you. Welcome to Alaska. Thank you, Your Honor. May it please the court, Lisa Damiano on behalf of the Attorney General. Good morning to you all. In these post Real ID Act consolidated cases, Mr. Osmani raises a myriad of claims, all of which stem from his attempts to re-litigate the immigration judge's adverse credibility finding and compensate for the deficiencies in his case below. Well, can we focus on an issue that your colleague didn't have a chance to get to? The transcript is not great. I think we could all agree on that. How bad does it have to be before we say we don't have a sufficient basis for conducting review? Well, the board looked at the issue. The transcript issue, first and foremost, wasn't raised on direct appeal. And I understand that that's a problem. But let's get to the merits of the issue. There's lots of gaps and unintelligibles. Yes, Your Honor. What's the minimum level of a transcript necessary for us to conduct appellate review? Well, I believe, Your Honor, that the transcript has to be such that, excuse me, the appellate body could provide meaningful review. And in this case, the board sua sponte looked at the record. Even though the issue had been waived on the direct appeal, the board sua sponte looked at the indiscernible issue and determined that they did not have any problem reviewing the specific findings of the judge due to the indiscernibles. That the indiscernibles occurred in a lot of places where the judge was the petitioner, was speaking to the attorney, speaking to the translator. The board felt there wasn't anything substantive that was affected with its reviewability. So let me ask you a second question about it. And I think you've sort of touched on it already. Because the board did look at this, should we really apply a waiver to the failure of Mr. Osmani to raise it on his direct appeal to the board? In other words, the board made findings that the transcript was sufficient for it to conduct appellate review. Since it made that finding, isn't that an issue directly before us also? Well, Your Honor, we're actually not asking the court to deem it waived. What we're asking for is the court to recognize that petitioner hasn't established that the board abused its discretion in denying the motion to reconsider. He has to show that the board acted arbitrarily, capriciously. Right, but that issue is appropriately before us, is it not? The issue of abuse of discretion is. Yes. The board looked at the transcript and first and foremost determined that because the issue wasn't raised below, that it could have denied the motion to reconsider on that basis alone. But it did not. But it did not. It made an alternative finding under sua sponte authority. And in doing so, looked at whether petitioner received due process with regard to the transcript. And they found that not only did it not impede their reviewability of the case, the specific issues raised in the adverse credibility finding, they also found that petitioner had not raised any specific indiscernibles or any specific instance where he felt that his case wasn't being understood or he felt that his words were being misinterpreted. The board can't... I mean, the board looked at the transcript and said, we don't see any problem here. We've been able to review it. And also this petitioner did not tell us any instances where we should specifically look and say, okay, yeah, we don't know what he said here or this is confusing. So in that regard, the petitioner didn't advise the board as to what exactly he was quarreling with, with the record. And as a matter of fact, petitioner hadn't raised any specific objections to the transcript until the 28J letter filed last night. So we feel that in this instance, with regard to the transcript, the board did not abuse its discretion. It certainly didn't act arbitrarily in determining that... Can I ask you a question about the ineffective assistance claim? Sure. Let's assume just for purposes of argument that counsel never meets with client before the hearing, no communication, just shows up at the hearing and we get a transcript. It looks like counsel's performing, asking questions, examining, etc. What do we do? Well, we have to... I mean, it's hard to figure out how the hearing would have gone had counsel actually prepared for it. And I'm not, again, don't... I understand there's some preparation issues in this case, but I'm just asking the question in general. Is it enough that counsel just... That's clear, clearly would be ineffective assistance in the Strickland sense, if you were in a criminal case, if you met your client on the day of the hearing and conducted the trial. But what do we then do? Well, if it's true that he didn't meet with the client, and if it's true that he wasn't prepared in any way by his attorney, we still have the fact that he admits he met with a paralegal. We also see in the record that the attorney very diligently continued to question him over and over about the issues that were before the court. I mean, I don't know... I guess I'm asking a different question. What's the burden of the petitioner under those circumstances? Assuming that we take as true the petitioner's allegations that I wasn't prepared at all, and I don't speak English, and there was translation difficulties, etc. What more does the petitioner have to show to make an ineffective assistance of counsel? Well, he has to show prejudice, but if you're just speaking about the ineffectiveness... Right, but my question is... I'm asking about the prejudice, which is how do you show it if you don't know how the hearing would have gone, were you prepared? Actually, Your Honor, in this case, there are many instances of inconsistencies and omissions that are entirely the doing of petitioner and that have absolutely no bearing on whether his counsel prepared him or who was even representing him, and I can give you some examples. For instance, Mr. Osmani said in his Credible Fear interview and in his asylum application that he joined the political party in November of 2006, and then when he was testifying, he stated that he joined in June of 2007. Something like that has nothing to do with... The key part of his claim is his participation and membership in this party, and he testified inconsistently about what date he joined the party. Well, you know, if he'd met ahead of time, they could have gone over that. He could have offered an explanation to the judge. Why about the inconsistency? He did offer an explanation the judge found to be not convincing, but my point is that... You know, it helps to relate the story ahead of time. I mean, it does, Your Honor, but... And as the IJ said, the application, the declaration that was attached to the application was very detailed. Right, it was very detailed. So clearly, Mr. Osmani had some help preparing it. At some point. At some point, he had help preparing it, because then on testimony... But let me ask you, from the time he submitted his application to the time of the hearing, what was the time? How many years was that? Was it a couple of years? Yes, it was at least a couple of years. The final hearing was, I believe, in 2011. So it was at least two years, because he came in in 2008 and filed his application in either 2009 or 2010. I'm not exactly sure on that. But there are many... You studied the case in preparation, and you can't remember the exact date. Okay, well, you got me, Your Honor. I cannot remember the exact date. But my point is that the date of his joining the party, that's a central issue to his claim. But let me just tell you this. In addition to that, we have the stabbing incident. In his credible fear interview, he didn't mention the stabbing at all. And he was represented by Texas counsel at the time. Now, an individual is not required to convey every detail of his claim in a credible fear interview. But the asylum officer asked him explicitly, when was the first time you were harmed? Mr. Osmani said, June of 2008. Completely leaving out that he was stabbed, purportedly, in January of 2007. Then the officer asked him, other than the incident in June of 2008, were there any other instances of harm? And Mr. Osmani said, no. So this is before he met with his counsel in Alaska. He left out an entire, well, a very serious allegation that he was stabbed. His claim only has two instances of harm, the stabbing in January of 07, and the arrest in June of 2008. And he was unable to convey that in his credible fear interview when asked point blank, what harm did you suffer? When was the first time you were harmed? He was represented by counsel, not this counsel. And what I'm saying, what I'm bringing to your attention is that there are several of these instances where if you take away the attorney, you take away the judge, you take away the courtroom layout, you take away the specific translator, all of these issues on direct appeal that Mr. Osmani raised, he still, of his own accord, presented inconsistencies and omissions that would have little bearing on counsel's preparation. At the credible fear hearing or meeting, whatever it was, was the lawyer there present in the room where? I believe the lawyer was on the phone. Was on the phone, right. So he wasn't there, you know. No, the lawyer was on the phone and there was also an interpreter. On the phone? On the phone, yes. But I see I'm almost out of time. Do your honors have any further questions for me? Okay. Okay. Thank you very much. You have a minute for rebuttal. Thank you. Your honor, I'd just like to address some of the points raised on rebuttal. As for the statement that there were no references to the indiscernible gaps in the transcript, on page 337 of the record, in lines 15 through 17, that's when Osmani is testifying to the type of forced use against him and his answer contains an indiscernible gap and we would posit that that is prejudicial and although the government says that he did receive due process, we'd argue that an incomplete record, a record with over 500 indiscernible gaps is not a complete record and does violate his right to due process in an administrative hearing. What about the stabbing omission? Your honor, I'd like to point again to the barrier, the practical realities of the barrier of language. He also mentioned to his attorney and also testified that there were some problems in the interpretation at the credible fear interview. As far as him not mentioning the stabbing, that's another perceived inconsistency that again, if he had met with his attorney prior to the hearing, that could have been brought forward to the judge. Let me ask you one quick question and I should know this from viewing the record, but I don't. Was there a court reporter at the hearing or is this an audio transcript? Your honor, I am not. The record doesn't seem to indicate. At the credible fear hearing. Oh, the credible fear hearing? Yeah. It's a tape recorder, right? Yes, your honor, I believe so. So that there is a record of what he said at that hearing that doesn't have indiscernible gaps. Yes. At the credible fear hearing, we have a transcript of the interview with the asylum officer, right? And there's no gaps in that. No, your honor. And I guess my question is, is there an audio available of the IJ hearing? An audio available of the IJ hearing in Anchorage? Yes, your honor. There is? Yes. So it's a transcript that has intelligibles in it. The question is, is the audio also an intelligible? Yes, well, your honor, I've listened to the audio and there are portions in which I do not understand. Well, some of them are Macedonian. OK. So I'm asking if someone who understood Macedonian were to listen to the audio, would it also be unintelligible at those points? Or did the court reporter just put down something that she couldn't because nobody translated it for? Well, your honor, I can't necessarily testify to that. But there is an audio of the IJ hearing. Yes, there's an audio. And there are portions in the audio where the judge is speaking, which I've listened to that it's not quite clear what the judge is saying. For our purposes, the certified record that the board relied on was the transcript. Yes, your honor. With all the discernibles, right? Yes, your honor. And that's what we're reviewing, not the transcript. Yes, your honor. Not the audio. Yes, your honor. That's what I mean. I'm sorry. Yes, your honor. OK. Good argument on both sides. Yeah, thank you. For your first argument, you've done as well as many experienced lawyers. So your client has been well represented. Thank you, your honor. Thank you. Interesting case. Matter is submitted.
judges: Fisher, Paez, Hurwitz